**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-33572 |
| | ) | |
| Nathan J. Nolan and | ) | Chapter 7 |
| Amy M. Nolan, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF OPINION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 23] and Debtors' response [Doc. #26]. The court held a hearing on the motion that counsel for the UST attended in person and Debtors' counsel attended by telephone. The parties were afforded time after the hearing to file supplemental legal memoranda and responses. [Doc. #28]. There were no supplemental legal memoranda filed. The court has jurisdiction over this case under 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtors' Chapter 7 case unless they convert it to Chapter 13.

### BACKGROUND

Although Debtors did not attend the hearing on the UST's motion, counsel for the parties agreed that there are no facts in dispute. Debtors are married and have three dependent children, ages five, three, and

one.  Their children's ages suggest, and their counsel stated, that Debtors are not nearing retirement age. Nathan Nolan had worked for his current employer for only a few weeks before their bankruptcy petition was filed.  Amy Nolan is employed as a nurse at Fisher Titus Medical Center where she has worked for eleven years.

On August 17, 2007, Debtors filed for relief under Chapter 7 of the Bankruptcy Code, stating that their debts are primarily consumer debts.  Their Schedule D shows total secured debt in the amount of $149,000, which includes debt secured by a 2006 Dodge Caravan and a $123,000 debt secured by Debtors' home, which they value at $105,600.  Debtors' amended bankruptcy schedules show unsecured nonpriority debt in the amount of $69,183, including a student loan obligation with an outstanding balance of $37,583, and no unsecured priority debt.  In their Statement of Intention, Debtors indicate that they intend to surrender their home and the court has since granted their secured creditor relief from the automatic stay with respect to the real property.

Debtors' amended Schedule I shows total monthly income after payroll deductions in the amount of $4,191, which amount includes deductions of $90 for payment of a 401(k) plan loan and $320 for contributions to a 401(k) plan that, at the time of filing, had a value of $26,000. Debtors' Schedule J shows total monthly expenses of $4,035, which includes, among other things, a student loan payment in the amount of $507.  Their budget otherwise reflects a modest lifestyle.

Debtors' Form B22A calculating the means test shows that their annualized current monthly income at the time of filing their case was above the median income for a family of five in Ohio.   No presumption of abuse arose under § 707(b)(2) after the calculation of allowed deductions. Instead, the UST filed a timely motion to dismiss for abuse under § 707(b)(3) based on the totality of the circumstances.

## LAW AND ANALYSIS

This case must be decided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act") because  it was filed on April 3, 2007, after the effective date of the Act.  Where debts are primarily consumer debts, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1).  Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances."  *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004).  The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances.  *Krohn*, 886 F.2d at 126.  Congress incorporated this

2

judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).[1]

In this case, the UST contends that the totality of the circumstances show that Debtors are not needy and have the ability to repay a significant portion of their unsecured debt. A debtor is "needy" when "his financial predicament warrants the discharge of his debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004)).

In arguing that Debtors have the ability to pay a significant portion of their unsecured debt, the UST asserts that deductions from Amy Nolan's income for a voluntary monthly 401(k) plan contribution and a 401(k) loan repayment of $320 and $90, respectively, as well as Debtors' monthly student loan expense of $507, should be considered income available to fund a Chapter 13 plan. Debtors counter that dismissal would not be appropriate since the student loans are non-dischargeable and are not in forbearance and since the funds borrowed from the 401(k) plan were used to meet their necessary living expenses and would have

---

[1] As this court noted in an earlier opinion:
While Congress has clearly lowered the dismissal standard, articulation of what that change really means in decision-making in a particular case is a slippery enterprise at best. A totality of circumstances amounting to substantial abuse would obviously also amount to abuse. The converse is not necessarily true. Perhaps more telling legislative evidence of a Congressional intent that bankruptcy courts should now afford less deference to a debtor's choice of Chapter 7 relief is the elimination from amended § 707(b) of the language in former § 707(b) stating that "[t]here shall be a presumption in favor of granting the relief requested by the debtor."
*In re Carney*, No. 07-31690, 2007 WL 4287855, *2, 2007 Bankr. LEXIS 4100, *7 (Bankr. N.D. Ohio December 5, 2007).

3

otherwise been exempt from bankruptcy administration.

With respect to Debtors' student loan expense, the court notes that a strong majority of courts agree that the non-dischargeability of a student loan is not, without more, a basis to permit a debtor to treat the student loan creditor more favorably than other unsecured creditors. *See, e.g., Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 215-16 (8th Cir. 1994); (*Bentley v. Boyajian (In re Bentley),* 266 B.R. 229, 239-42 (B.A.P. 1st Cir. 2001); *In re Tucker*, 150 B.R. 203, 205 (Bankr. N.D. Ohio 1992); *In re Reimer*, No. 07-32787, 2008 WL 495537, *2-3, 2008 Bankr. LEXIS 517, *6-9 (Bankr. N.D. Ohio Feb. 21, 2008); *cf. XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1453 (6th Cir. 1994) (agreeing that courts must act "very cautiously" in making an equitable determination "in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws"). *But see In re Gregg*, 179 B.R. 828, 830 (Bankr. E.D. Tex. 1995) (finding that separate classification of student loans for payment in full does not unfairly discriminate against the other unsecured creditors who would be paid only .74% since the student loans are nondischargeable). However, even if Debtors continue to make their monthly student loan payment, the court finds that they still have the ability to repay a substantial portion of their remaining unsecured debt if they reallocate funds now being paid to Amy Nolan's 401(k) plan for that purpose.

In *Behlke,* the court affirmed the bankruptcy court's decision dismissing a Chapter 7 case as substantial abuse of the provisions of that chapter, finding that the debtors' voluntary 401(k) contributions in the amount of $460 per month were not necessary for the maintenance and support of the debtors or their dependents and, therefore, should be included as disposable income for purposes of determining their ability to pay their creditors out of future earnings. *Behlke*, 358 F.3d at 435-36. In so finding, the court's "starting point" in its analysis was its earlier holding in *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775, 777-78 (6th Cir. 1995), that a Chapter 13 debtor's voluntary repayment of loans to her retirement account was not necessary for the debtors' maintenance and support and must be included in the Chapter 13 plan as disposable income. *Behlke*, 358 F.3d at 435. The court found no reason to distinguish between the voluntary repayment of a loan from a retirement account and voluntary contributions to a 401(k) or other retirement plan. *Id.* The court then considered the bankruptcy court's findings that the debtors had accumulated $48,200 in retirement savings, stock options of unknown value, and residential real property with significant equity and that there was no indication that the value of the property would not appreciate. The court stated that "applying *Harshbarger* and finding that the debtors had accumulated retirement savings as well as other personal and real property of potentially significant future value, the bankruptcy

4

court found that the monthly 401K contribution, which is equal to 6% of Mr. Behlke's gross income, should be included as disposable income for purposes of determining the debtors' ability to pay their creditors" and that it "agree[d] completely" with the bankruptcy court's conclusion. *Id.* at 436 (emphasis added).

This court recently addressed the precedent established by *Behlke* and concluded that it, as well as the plain language of § 707(b)(3), requires consideration of the totality of the debtor's individual circumstances in determining whether a debtors' 401(k) contributions are reasonably necessary. *See In re Tucker*, Case No. 07-32940 (Bankr. N.D. Ohio May 20, 2008) (citing *In re Beckerman*, 381 B.R. 841, 848-49 (Bankr. E.D. Mich. 2008); *In re Gonzalez*, 378 B.R. 168, 174 (N.D. Ohio 2007)). As one court stated, "[t]here is little reason for a 'fresh start' that will only be answered with a substantial incapacity to provide for oneself at retirement." *In re King*, 308 B.R. 522, 531 (Bankr. D. Kan. 2004). Therefore, debtors may seek bankruptcy relief while voluntarily saving for retirement if such savings appear reasonably necessary for the maintenance or support of the debtor or the debtor's dependents. *Hebbring v. U.S. Trustee*, 463 F.3d 902, 907 (9th Cir. 2006). Factors relevant to this determination include: (1) the debtor's age and time left until retirement; (2) the amount of the debtor's existing retirement savings (3) level of yearly income; (4) overall budget; (5) amount of monthly contributions; (6) needs of any dependents; and (7) other constraints that make it likely that retirement contributions are reasonably necessary expenses for this particular debtor. *Beckerman*, 381 B.R. at 848 (citing *Hebbring,* 463 F.3d at 907, *Taylor,* 243 F.3d at 129-30).

In this case, Debtors' income is above the median income. They have already accumulated approximately $26,000 in retirement savings. While not an exorbitant amount, Debtors are not approaching retirement age such that interrupting their retirement saving at this time will result in an inability to provide for themselves in retirement. Rather, Debtors will have substantial time at the conclusion of a Chapter 13 plan to continue to save for their retirement. The court is aware of no other constraints that would make Debtors' retirement savings at this time reasonably necessary. Under these circumstances, the court agrees with the UST that the 401(k) contributions and loan repayments could be applied, without depriving Debtors or their dependents of any necessity, to repay Debtors' unsecured debt rather than to fund Amy Nolan's own retirement plan.[2] *See Behlke*, 358 F.3d at 435 (quoting *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D. Ohio 1991)("In these circumstances, 'it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.'").

---

[2] To the extent that the use of the funds borrowed from the 401(k) plan is relevant as argued by Debtors' lawyer, there is no evidence of such use before the court.

Although Nathan Nolan only worked for his current employer a short time before Debtors filed their bankruptcy petition, there is no indication that his job is in jeopardy or that Debtors do not now enjoy generally stable, regular income. As such, they are eligible for Chapter 13 should they choose to seek such relief as their debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). If Debtors maintain their student loan payments as indicated on their Schedule J, *see* 11 U.S.C. § 1322(b)(5), but apply the amounts now used to fund Amy Nolan's 401(k) plan, or $410 per month, to fund a Chapter 13 plan over the sixty-month maximum plan duration for above-median income debtors, *see* 11 U.S.C. § 1322(d)(1), Debtors would have approximately $23,000 available after payment of the Chapter 13 Trustee's administrative expenses to pay on their remaining unsecured debt. If Debtors add to that the $507 per month now budgeted for student loan payments, *see Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 215 (8th Cir. 1994) (explaining that Debtors have the ability to formulate a Chapter 13 plan that pays student loan creditors pro rata with other unsecured creditors during the life of the plan and as a continuing obligation thereafter),[3] after payment of the Chapter 13 Trustee's administrative expenses, they would have approximately $51,380 available to pay their unsecured debt. Debtors' schedules show no unsecured priority debt, total unsecured nonpriority debt in the amount of $69,183, and that their total unsecured nonpriority debt less the debt owed to their student loan creditor totals $31,600. Unsecured creditors, therefore, under either payment scenario may potentially receive a dividend of nearly 73 to 74 percent.[4] *See In re Behlke*, 338 F.3d 429, 437 (6th Cir. 2004) (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors).

The availability of debtors' remedies under state law (such as a municipal court trusteeship or credit counseling proceedings that will stop wage garnishments under Ohio law) and the relief that might be afforded through private negotiations are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtors' financial problems.

---

[3] The court takes no position in this opinion as to the proper treatment of a student loan debt in a Chapter 13 plan. Courts have taken various approaches to determining the options that may be available to a debtor. *See* 2 Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Ed.*, § 153.1 (2000 & Supp. 2004) (including extensive discussion and citation of cases).

[4] It is not now known what impact the relief from stay and abandonment granted the secured creditor with respect to Debtors' real property would have on Debtors' total unsecured debt and thus on a Chapter 13 plan. Debtors' schedules show that the real property is undersecured by approximately $17,400. Adding this amount to the unsecured debt discussed above, a meaningful dividend of nearly 47 to 59 per cent could still be paid to unsecured creditors over 5 years time.

6

Nevertheless, on balance, the court finds that granting Debtors relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the following financial circumstances: (1) Debtors have generally stable, regular income; (2) they are eligible for Chapter 13 relief if they choose to seek such relief; (3) Amy Nolan has the ability to reduce payroll deductions funding her 401(k) plan without depriving Debtors or their dependents of any necessity; (4) and they have the ability to repay a meaningful portion of their remaining unsecured debt even while maintaining payments on their student loan debt.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtors are allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the Motion of the United States Trustee to Dismiss Pursuant to 11 U.S.C. § 707(b)(3) [Doc. #23] will be granted, and this case will be dismissed, by separate order of the court.